UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:25-CR-59-CCB-SJF |
| QUONZEE MERRIWEATHER | |

**OPINION AND ORDER**

On July 9, 2025, a federal grand jury charged Defendant Quonzee Merriweather with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a machinegun in violation of 18 U.S.C. § 922(o). (ECF 1). Merriweather has moved to suppress all evidence derived from a traffic stop of the vehicle he was driving on May 24, 2025. (ECF 32). He also requests an evidentiary hearing alleging that there are disputed facts material to the outcome of the motion to suppress. Based on the applicable law, facts, and argument, Merriweather's motion to suppress and request for evidentiary hearing will be denied.

I.    **FACTUAL FINDINGS**

The following facts either were not disputed in the parties' motion briefing or emerged from the evidence submitted on the record that includes

- body camera footage time-stamped May 24, 2025, 02:19:56–02:35:00 from the police officer interviewing an intended shooting victim (Government's Exhibit 1);

- body camera footage time-stamped May 24, 2025, 05:09:55–05:19:00 from the police officer conducting the Merriweather traffic stop (Government's Exhibit 2);

- body camera footage time-stamped May 24, 2025, 05:10:43–05:17:34 from the police officer conducting the K-9 free air sniff during the Merriweather traffic stop (Government's Exhibit 3);

- a photograph of the back of a silver Jeep limited edition with Indiana license plate 249DKD (Government's Exhibit 4);

- a PDF copy of Mr. Merriweather's learner's permit with notations in the header including "May 24, 2025 6:35:05 AM" and "printed by AKM8669 from LPRD 0006" (Government's Exhibit 5); and

- multiple photographs that show a firearm laying on its side next to a magazine and a bullet (Government's Exhibit 6); a firearm held in a gloved hand with a view down the barrel (Government's Exhibit 7); a black face mask (Government's Exhibit 8); and an empty baggie, a can of a beverage, two cell phones, a Looseleaf Cookies Cinnamon Milk package, and what looks like a used brown cigarette in a baggie (Government's Exhibit 9). *See* Fed. R. Crim. P. 12(d).

On May 24, 2025, around 2:00 a.m., local police responded to reports of gunfire on Seymour Avenue in Michigan City, Indiana. At the scene, they collected 18 spent casings and saw three cars with apparent gunfire damage. While processing the scene, a male and a female approached the officers saying they heard the gunfire, which they initially thought was fireworks. The officers observed gunfire damage to the couple's car and concluded that they were victims of intended gunfire.

The male victim told the officers that he assumed the shooter was Quonzee Merriweather, his ex-girlfriend's brother. The victim reported several things about

Merriweather to the officers. Specifically, he reported having seen Merriweather wearing a mask during a previous incident on the porch of his ex-girlfriend's home; driving a gray Jeep Cherokee manufactured "within the last ten years" and registered to his child's mother named Essence Timberlake. He also told the officer that Merriweather lived on Grace Street. The victim also provided information about his ex-girlfriend, including her name and a description of her car. He then told police that Merriweather and his ex-girlfriend might look for him at his uncle's house on 8th Street or his brother's house on Green Street.

In working to corroborate the information from the victim, police found a citation issued to Merriweather on April 9, 2025, while driving a silver Jeep Compass with Indiana plate 249DKD. The Jeep was registered to Essence Timberlake at an address on Grace Street in Michigan City. Officers then reviewed data from available license plate reader ("LPR") technology[1] and located the 249DKD license plate at Wabash and 8th Street on May 24, 2025, at 12:56 a.m. The Jeep was therefore about one mile from the Seymour Avenue address where the gunfire had occurred about one hour before the report of gunfire.

The Government states that an officer[2] continued monitoring the LPR tracking system throughout the night looking for the silver Jeep. Between 4:30 a.m. and 5:00 a.m. that morning, the officer was notified twice in short succession that the silver Jeep was

---

[1] In his motion, Merriweather refers to "FLOCK license plate readers." (ECF 32 at 4).

[2] In his motion, Merriweather identifies the officer as Brock Moore and references a written report by Officer Moore that was not provided to the Court. (*Id.*).

traveling near Michigan Boulevard and East 8th Street, which was near the victim's uncle's house on 8th Street. After locating the silver Jeep parked in front of a house on Walker Street, the officer observed a person matching Merriweather's description leave the house, enter the silver Jeep, and drive away.

According to the Government, the officer observed the Jeep disregard one stop sign and fail to come to a complete stop at a second stop sign. The officer then saw the Jeep take off at a high rate of speed, which he paced at 40 mph in a 30-mph zone. The officer activated his emergency lights to conduct a traffic stop, and the Jeep stopped perpendicular to the driveway of 225 Grace Street. Merriweather denies running any stop sign or speeding at that time of the morning. None of the video or photographic evidence in the record shows the Jeep running any stop sign or speeding.

Once the Jeep stopped, the officer approached the vehicle with his body camera activated. Merriweather was the driver and only occupant of the car. He was argumentative but gave his Indiana Learner's Permit to the officer. Merriweather asked the officer why he was stopped and the officer said "speeding." The officer did not mention any stop sign violations, inform Merriweather of the speed limit in the area, or tell him how fast he was allegedly driving. The officer then returned to his car to complete registration and warrant checks on Merriweather.

While the officer was in his car, another officer and his K-9 partner arrived. The K-9 officer approached the Jeep on the passenger side and spoke to Merriweather through the passenger window. The officer explained that he would be conducting a free air sniff using his dog. Merriweather asked the officer questions in an agitated

4

manner. The free air sniff was completed, and the K-9 was returned to the officer's patrol vehicle. The Government reports that the K-9 gave a positive alert to the odor of a controlled substance.

After the reported alert, the stopping officer returned to the driver's side window of the Jeep with the K-9 officer at the passenger's side. The stopping officer asked Merriweather to step out of the vehicle. Merriweather refused to comply. The officer warned that they would get him out of the car. Merriweather still refused. When the officer reached into the vehicle to open the door, Merriweather slapped his hand away. When the officer got Merriweather's door open, Merriweather pushed the door open and ran away. Both officers gave chase and deployed several taser cartridges. Merriweather fell to the ground, continuing to resist and ignoring officer commands. Once contained, Merriweather was arrested and transported to the police department.

The Jeep was then searched. Police found marijuana "shake," a half-smoked marijuana cigarette, a black face mask, and a THC drink and recovered a Palmetto Dagger Compact, 9mm handgun (serial number CDO36064, manufactured in West Columbia, South Carolina) with an extended magazine under the driver's seat. The officer photographed the firearm where he found it.

A search warrant was obtained to collect Merriweather's DNA. Merriweather's sample and the swabs from the firearm were sent to the Indiana State Police lab for analysis. The DNA profile from the slide of the firearm produced very strong support for the proposition that Merriweather was one of three individuals whose DNA was on the gun. The firearm was also test fired with 3 bullets loaded, and it operated in a fully

automatic capacity. The casings from the test fire were also compared to 8 of the 18 casings collected from the Seymour Avenue scene. All 8 casings were identified as being fired from the firearm found in the Jeep driven by Merriweather.

## II.    ANALYSIS

Through the instant motion, Merriweather seeks suppression of all items seized during the traffic stop and vehicle search on May 24, 2025, specifically the Palmetto Dagger firearm found under the driver's seat of the Jeep, the ballistics, and the DNA. He argues that there was not probable cause for the stop because he did not run any stop signs or speed that morning. Merriweather contends that the alleged traffic violations were merely pretextual so that the officer could stop the Jeep and investigate its relation to the earlier shooting on Seymour Avenue. Merriweather also argues that there was not probable cause or reasonable suspicion sufficient to justify searching the Jeep. He states that there are questions as to whether the K-9 free air sniff properly and actually provided the necessary probable cause for the search of the Jeep.

Thus, Merriweather requests an evidentiary hearing to resolve the disputed factual questions about the officer's alleged observations of traffic violations on May 24, 2025, around 5:00 a.m. and the K-9 free air sniff of the Jeep. In support, Merriweather relies on what he describes as inconsistent statements by the stopping officer in both his written report and his answer to Merriweather's question at the scene about the reason for the stop. He also notes the lack of dash cam video to corroborate the officer's alleged observations of traffic violations. He does not identify any evidence to challenge the propriety of the free air sniff or its results.

### A.    Traffic Stop

The Fourth Amendment to the United States Constitution establishes the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Traffic stops are permissible under the Fourth Amendment so long as the officer has probable cause to believe a traffic violation occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). "Probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (internal quotation omitted). "The prosecution bears the burden of proving by a preponderance of the evidence that a warrantless stop is supported by probable cause." *United States v. Peters*, 743 F.3d 1113, 1116 (7th Cir. 2014).

Traffic stops, however, are "typically brief detentions, more akin to [investigative] *Terry* stops than formal arrests [and therefore] require only reasonable suspicion of a traffic violation—not probable cause." *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021); *see also Navarette v. California*, 572 U.S. 393, 396 (2014). Reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped of criminal activity" based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417–18 (7th Cir. 1981). Relevant to the totality of the circumstances is "both the content of information possessed by police and its degree of reliability." *Navarette*, 572 U.S. at 397. And while "mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of

wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *United States v. Sokolow*, 490 U.S. 1, 7 (1989)) (quotations omitted).

Reasonable suspicion is an "objective" inquiry that "does not depend on the officers' subjective intent." *United States v. Avila*, 106 F.4th 684, 696 (7th Cir. 2024) (citing *Whren*, 517 U.S. at 813). Looking at the "law as written," the question is whether a reasonable officer could have identified facts that reasonably showed a violation of the law. *United States v. Jackson*, 962 F.3d 353, 358 (7th Cir. 2020). Even if the defendant did not violate the statute, there is reasonable suspicion if an objective officer in the stopping officer's shoes could reasonably believe the defendant did. *United States v. Flores*, 798 F.3d 645, 648 (7th Cir. 2015).

Merriweather does not dispute that running a stop sign, speeding, or driving alone with only a learner's permit are traffic violations. He does not dispute that he was driving alone May 24, 2025, with only a learner's permit in violation of Indiana Code 9-24-7-4 (requiring individuals with learner's permits to be accompanied in the front seat by a licensed driver when practice driving). He only disputes whether he ran any stop sign or drove in excess of the speed limit around the time of the traffic stop on May 24, 2025. He argues that the Government has not submitted evidence sufficient to prove by a preponderance of the evidence that a warrantless stop was supported by probable cause. *See Peters*, 743 F.3d at 1116.

Merriweather directs the Court's attention to a district court case where a motion to suppress was granted because the Government had not established probable cause.

*See United States v. Victor J. Dominguez-Fernand 01*, No. 1:15-cr-00220-JMS-MJD, 2016 U.S. Dist. LEXIS 76368 (S.D. Ind. June 13, 2016). The court in *Dominguez-Fernand* found in favor of the defendant after an evidentiary hearing finding that the record offered little to corroborate the stopping officer's version of events with regard to the alleged traffic violations. *Id.* at *16. The court noted that the officer had not turned on his dash cam video, which could have corroborated the traffic violations the officer allegedly observed. *Id.*

Here, the evidence available is limited to two unverified statements. The first is from Merriweather himself, as presented in the motion to suppress, stating that he did not run any stop sign or speed that morning. The second is from the Government, as stated in its response brief, stating that the stopping officer saw Merriweather fail to come to a complete stop at two stop signs and paced Merriweather driving 40 mph in a 30-mph zone. The record here, like the record in *Dominguez-Fernand*, lacks any dash cam video that could have corroborated the stop sign and speeding violations alleged by the stopping officer. The body cam video footage available here also shows that the stopping officer only informed Merriweather of the alleged speeding violation; and even then, he provided no details to Merriweather. The comparison to *Dominguez-Fernand*, however, must stop there as there is sufficient probable cause for the traffic stop arising from other undisputed facts.

Regardless of the stop sign or speeding allegations, review of the totality of the circumstances reveals that the stopping officer had reliable information establishing probable cause that Merriweather was driving the silver Jeep without a licensed driver

9

in the car as required by Indiana law. Police had taken information provided by the Seymour Avenue shooting victim and connected Merriweather to the Jeep with license plate 249DKD with the April 9, 2025, citation. The citation alone would have confirmed for police that Merriweather was not a licensed driver. Police had also verified that the Jeep was registered to Essence Timberlake, just like the shooting victim said. Thus, when the stopping officer tracked the Jeep to Walker Street then observed a man matching Merriweather's description leave the house, enter the silver Jeep, and drive away alone, he had reasonable suspicion that Merriweather violated the law by driving the Jeep alone.

Additionally, the stopping officer had reliable information that connected both the Jeep and Merriweather to the Seymour Avenue shooting before initiating the traffic stop. The victim had described the Jeep, and his concerns about retaliation from Merriweather because of his relationship with Merriweather's sister, to police. The police had located the April 2025 citation showing that Merriweather was found driving the Jeep registered to his child's mother. The police had also tracked the Jeep to a location near Seymour Avenue an hour before the shooting and to locations near the victim's uncle's home as predicted. The victim's statement and the subsequent verification of the information he provided about the Jeep and Merriweather's likely activity was reliable information available to the stopping officer. Based on that, it was reasonable for the officer to believe that Merriweather had been the person driving the Jeep down Seymour Avenue and shooting a firearm multiple times. In Indiana, such behavior was consistent with criminal recklessness. *See* Ind. Code § 35-42-2-2(a) (eff.

July 1, 2019, to June 30, 2025) ("A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness."). Thus, it was reasonable for the stopping officer to believe that Merriweather had engaged in criminal recklessness creating probable cause for the traffic stop even if Merriweather did not run a stop sign or speed that morning.

The stopping officer's reasonable suspicion of criminal activity by Merriweather also overcomes Merriweather's argument that the traffic stop was unconstitutional because it was pretextual. As Merriweather states, "[p]olice may not use a traffic stop as a pretext to search for evidence." *United States v. McPhaul*, No. 1:14-cr-00203-TWP-TAB, 2015 WL 4193056, at *3 (S.D. Ind. July 10, 2015) (citing *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995)). But a traffic stop is not pretextual "if there was probable cause to make the stop, and if the stopping officer was acting with authority . . . ." *Willis*, 61 F.3d at 530. And "the Fourth Amendment permits pretextual stops as long as they are based on an observed violation of a traffic law." *McPhaul*, 2015 WL 4193056, at *3 (citing *Whren*, 517 U.S. at 810). And as already discussed, the stopping officer reasonably believed that Merriweather had committed the traffic violation of driving on a learner's permit without a licensed driver in the car. Therefore, any pretext that may have existed does not make the traffic stop unconstitutional.

### B.    Warrantless Search of Jeep

Probable cause also existed for the warrantless search of the Jeep. Warrantless searches "are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332,

338 (2009). The Government bears the burden to show by a preponderance of the evidence that a warrantless search falls within one of those exceptions. *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009).

One such exception is the automobile exception, first recognized in *Carroll v. United States*, 267 U.S. 132 (1925), which authorizes law enforcement to conduct a warrantless search of a vehicle "where there is probable cause to believe that [the] vehicle contains contraband or evidence of a crime." *Id.* Probable cause exists where, based on the totality of circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A positive alert by a canine during a free air sniff provides the police with probable cause to search a vehicle. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Here, the canine alerted to a controlled substance during a free air sniff of the Jeep. Presumably, the alert is sufficient to establish probable cause for the search of the Jeep under the automobile exception. But Merriweather suggests that there are questions about whether the canine alerted and the propriety of the sniff. The Court need not resolve those questions because another exception to the warrantless search applies.

"Abandoned property is not subject to Fourth Amendment protection." *United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000)). "Fourth Amendment protection only extends to places and items for which a person has a reasonable expectation of privacy, and no person can have a reasonable expectation of privacy in an item that he has abandoned." *Basinski*, 226 F.3d at 836. Merriweather

abandoned the Jeep when he fled the Jeep leaving it parked on the street with the driver's side door open. Therefore, he had no expectation of privacy to preclude a warrantless search regardless of the free air sniff.

### C. Evidentiary Hearing

Based on these analyses, Merriweather has not established the need for an evidentiary hearing. Evidentiary hearings to resolve a motion to suppress are not automatically required. *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007). The Court only needs to conduct an evidentiary hearing "when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004). Merriweather, as the party requesting the hearing, bears the burden of showing that there are disputed issues of material fact that require an evidentiary hearing. *See United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988). "A disputed issue only warrants an evidentiary hearing, however, if the difference in facts is material, that is, only if the disputed fact makes a difference in the outcome." *United States v. Juarez*, 454 F.3d 717, 720 (7th Cir. 2006) (internal quotations and citation omitted).

As to the traffic stop, the dispute over the alleged traffic violations is not material because reasonable suspicion existed based on the stopping officer's reasonable belief that Merriweather engaged in criminal recklessness on Seymour Avenue and unlawfully drove the Jeep from Walker Street to Grace Street without a licensed driver.

Additionally, Merriweather has not adequately established any disputed issues of material fact related to the K-9 air sniff alert to justify an evidentiary hearing regarding the warrantless search of the Jeep. Merriweather does not submit "sufficiently definite, specific, non-conjectural and detailed enough" allegations and information to conclude that the K-9 did not give a positive alert to the odor of a controlled substance. *See Villegas*, 388 F.3d at 324. He just states that there are questions without identifying what those questions might be. So the Court cannot determine what the disputed issues are or whether they would be material to the outcome of the instant motion to suppress. *See Rollins*, 862 F.2d at 1291; *Juarez*, 454 F.3d at 720. Furthermore, as already discussed, he had no expectation of privacy to preclude a warrantless search regardless of the free air sniff.

An evidentiary hearing would only fill gaps in the record without resolving a factual issue necessary for the Court to decide the instant motion to suppress. *See United States v. Dixon*, 137 F.4th 592, 610 (7th Cir. 2025); *Villegas*, 388 F.3d at 324. Therefore, an evidentiary hearing is not warranted.

## III.    CONCLUSION

For these reasons, Merriweather's Motion to Suppress is **DENIED**. (ECF 32). Merriweather's trial and final pre-trial conference dates will be set by separate order.

SO ORDERED on March 10, 2026.

_/s/ Cristal C. Brisco_____
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT