UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:25-CR-59-CCB-SJF |
| QUONZEE MERRIWEATHER | |

## ORDER

On April 10, 2026, Defendant Quonzee Merriweather filed a motion asking the Court to reconsider its opinion and order denying his motion to suppress without an evidentiary hearing. (ECF 49). Merriweather's motion to reconsider became ripe on April 24, 2026, after the Government filed a response brief, and he filed a reply brief. Based on the applicable law, facts, and arguments, Merriweather's motion to reconsider will be denied.

### I.   RELEVANT BACKGROUND

On July 9, 2025, a federal grand jury charged Merriweather with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a machinegun in violation of 18 U.S.C. § 922(o). (ECF 1). On January 2, 2026, Merriweather moved to suppress all evidence derived from a traffic stop of the vehicle he was driving on May 24, 2025, and also requested an evidentiary hearing. (ECF 32). In responding to Merriweather's motion to suppress, the Government submitted nine exhibits including body camera video footage, a screenshot of Merriweather's driver's license/permit status, photographs of items from the Jeep

including the driving permit Merriweather provided to the stopping officer, and photographs of the silver Jeep, with Indiana plate 294DKD, he was driving at the time of the stop. (ECF 38). Merriweather did not file a reply brief in support of his motion to suppress despite being afforded ample time to do so. *See* N.D. Ind. L. Cr. R. 1-1(b); N.D. Ind. L.R. 7-1(d)(3)(B).

On March 10, 2026, the Court denied Merriweather's motion to suppress. (ECF 41). In reaching its decision, the Court made findings on three issues related to the traffic stop and the subsequent search of the Jeep that Merriweather now challenges through his motion to reconsider.

## II.   ANALYSIS

"No federal rule or statute allows a motion to reconsider in a criminal case, but reconsideration motions are accepted as a common-law practice." *United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014) (citing *United States v. Healy*, 376 U.S. 75, 79–80, 84 (1964)). "[M]otions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits." *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010). A motion to reconsider serves the limited function of correcting manifest errors of law or fact or presenting newly discovered evidence. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996); *see also United States v. Ewing*, Case No. 14-CR-40084-SMY, 2015 WL 2407665, at *1 (S.D. Ill. May 19, 2015) (stating that motions to reconsider are proper when "they are based on an intervening change in controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice."). "Reconsideration is not an appropriate

forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.* at 1270.

Merriweather rejects certain factual findings by this Court as contradictory to the evidence. He contends that the Court's reliance on these incorrect facts led to improper conclusions about the propriety of the traffic stop on May 24, 2025, and the subsequent search of the Jeep. Merriweather requests an evidentiary hearing, like he did in the original motion to suppress, to develop essential facts relevant to the Court's determinations of whether the premises for and factual conclusions in its opinion and order denying the motion to suppress were accurate.

### A.   Driver's License Status and Reliable Information Connecting Merriweather to the Shooting

In its opinion, the Court concluded based on review of the totality of the circumstances before it that "the stopping officer had reliable information establishing probable cause that Merriweather was driving the silver Jeep without a licensed driver in the car as required by Indiana law." (ECF 41 at 9–10). Merriweather argues that this statement is "simply wrong" because "undisputed evidence" shows he had a full driver's license, not a learner's permit, on the date of the stop such that he was not required to drive with a licensed driver. (ECF 49 at 2). Merriweather also argues that before the stop, the stopping officer had no suspicion that Merriweather was driving alone on a learner's permit.

In support, Merriweather relies on a copy of his driver's license submitted as Government Exhibit 5 in response to the original motion to suppress. The document has

a header that precedes Merriweather's license with information including an unspecified date of "May 24, 2025 6:35:05 AM" and a "Received Time" of "07:34:14 05-24-25" as well as reference to "Moore." No one questions that the times are consistent with the time of the traffic stop or that Moore was the last name of the stopping officer. Below the header is a boxed area titled "Indiana Driver's License," the top of which includes an issue date of "04-16-2025" and an expiration date in 2031. The bottom part of the boxed area has a section titled "Permits," which identifies a "LEARNER PERMIT" issued on October 17, 2024, and expired on April 16, 2025. Merriweather also attached the stopping officer's police report regarding the May 24th traffic stop and quoted an excerpt stating that he conducted the records check after initiating the stop and that "Merriweather returned on a valid Indiana Learners Permit." (ECF 49 at 3).

To start, Merriweather could have challenged the Government's original interpretation of his driver's license as a learner's permit in a reply brief in support of his motion to suppress. Merriweather could have also filed the police report with his motion to suppress or a reply brief, had he filed one. Merriweather could have also made arguments arising from the driver's license and police report in either his motion to suppress or a reply brief. He did not. Thus, his arguments here based on this evidence that was undisputedly available during the pendency of the motion to suppress need not be given consideration now. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1269.

With that said, it appears that Government Exhibit 5 was misinterpreted and does in fact show that Merriweather had a full driver's license during the stop on May

4

24, 2025, even though he presented the stopping officer with his learner's permit. *See* Government Exhibit 9. Nevertheless, neither Merriweather's driver's license status nor the stopping officer's belief regarding Merriweather's driver's license status before or after the stop materially alters the analysis of whether the officer had probable cause to stop Merriweather in the silver Jeep that day.

A traffic stop is reasonable under the Fourth Amendment when a reasonable officer would suspect an individual in the car engaged in criminal activity. *Navarette v. California*, 572 U.S. 393, 396–97 (2014). The facts of *Navarette* are instructive here. In *Navarette*, the officer stopped a vehicle on suspicion of drunk driving based on a report from a 911 caller that she had been run off the road by the vehicle. *Id.* at 395. The caller described the vehicle in detail and indicated the direction it was traveling. *Id.* Reasonable suspicion for the stop existed because the officer deemed the detailed information provided by the 911 caller reliable to connect the vehicle stopped to alleged criminal behavior. *Id.* at 398–404.

When deciding Merriweather's motion to suppress, the Court encountered facts somewhat similar to those in *Navarette*. The facts of record, as reported by the Government and not challenged, or even addressed, by Merriweather in a reply brief, started with an early-morning shooting on Seymour Avenue on May 24, 2025, before Merriweather was stopped several hours later in the silver Jeep. The stopping officer was one of the officers who responded to the shooting. A victim shared with investigators at the scene his suspicions about the shooting. He stated that he suspected Merriweather, the brother of his former girlfriend with whom he had some issues,

could have been the shooter and that Merriweather was known to drive a silver Jeep Cherokee. With that information, the officers linked Merriweather to a silver Jeep Compass, with Indiana plate 249DKD, through a citation issued to Merriweather on April 9, 2025, based on another incident. While on patrol later on May 24th, the officer became aware of a silver Jeep Compass with the same license plate and observed a person matching Merriweather's description get into the vehicle and drive away. He followed the Jeep and then conducted the traffic stop suspecting that Merriweather was connected to the shooting earlier that day.

Thus, the Court found that "the stopping officer had reliable information that connected both the Jeep and Merriweather to the Seymour Avenue shooting before initiating the traffic stop" and "it was reasonable for the officer to believe that Merriweather had been the person driving the Jeep down Seymour Avenue and shooting a firearm multiple times." (ECF 41 at 10). The police incident report that Merriweather filed with the instant motion to reconsider confirms that Merriweather was a "Suspect/Offender" in the shooting as was his sister also named by the interviewed victim. The Court also rejected Merriweather's argument that the shooting was improper pretext for the stop and found the officer had reasonable suspicion that Merriweather had been involved in the shooting.

Merriweather now argues that the information the Court relied on to connect the Jeep Compass and Merriweather to the Seymour Avenue shooting was not reliable. He references police reports prepared by officers on the scene of the shooting, including one from the stopping officer. He references witness statements about what kind of

vehicle was seen at the shooting scene near the time of the shooting. He challenges the interviewed victim's suspicions that Merriweather could have been the shooter as unreliable, rank speculation. He contends that nothing corroborates his presence in the area at the time of the shooting, his firing shots in that area at that time, or his motive to fire shots at the interviewed victim.

Yet Merriweather does not contest other information derived from the interview with the same victim. The body camera video shows the victim telling the officer about his domestic dispute with Merriweather's sister, his knowledge of Merriweather during a previous incident, and Merriweather's link to a silver Jeep. Merriweather ends his argument previewing evidence new to the record that would be available at an evidentiary hearing—specifically, that he was at the Blue Chip Casino at the time of the shooting. This evidence and all this argument could have been presented to the Court during the pendency of the motion to suppress, but was not. As a result, the Court need not consider it now. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1269.

Even so, "reasonable suspicion need not rule out the possibility of innocent conduct." *Navarette*, 572 U.S. at 403 (internal quotations omitted). The stopping officer's belief that Merriweather was involved in the Seymour Avenue shooting could have been completely wrong but would still support reasonable suspicion of criminal conduct. Merriweather views the reliability of the interviewed victim's statements differently than the Court. But he has neither shown an error of fact or law nor presented newly discovered evidence to overcome the Court's conclusion that the

7

information and evidence the stopping officer relied upon was sufficient to support a reasonable suspicion regarding Merriweather's connection to the shooting.

### B.    Abandonment of and Expectation of Privacy in the Jeep

Merriweather lastly challenges the Court's conclusion that he "abandoned the Jeep when he fled the Jeep leaving it parked on the street with the driver's side door open" as being contradicted by the body camera video footage of the stop and search of the silver Jeep. (ECF 49 (quoting ECF 41 at 13)). He argues that the police had no right to search the Jeep as an abandoned vehicle. In support, Merriweather contends the video shows the Jeep lawfully parked on the private property of its registered owner rather than parked on a public street and shows him fleeing from the Jeep out of fear for his life due to the stopping officer's conduct.

The Government argued in response to the original motion to suppress that Merriweather had abandoned the Jeep during the stop such that he no longer had a reasonable expectation of privacy protectible under the Fourth Amendment. (ECF 38 at 13). As the Court has already explained, "[a]bandoned property is not subject to Fourth Amendment protection." (ECF 41 at 12 (quoting *United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000)))). "Fourth Amendment protection only extends to places and items for which a person has a reasonable expectation of privacy, and no person can have a reasonable expectation of privacy in an item that he has abandoned." *Basinski*, 226 F.3d at 836. Merriweather, as a defendant objecting to a search, "bears the burden of proving a legitimate expectation of privacy in the area searched." *Pitts*, 322

F.3d at 456 (citing *United States v. Ruth*, 65 F.3d 599, 604 (7th Cir. 1995), *cert. denied*, 517 U.S. 1158 (1996)). Merriweather had the opportunity to present evidence of his expectation of privacy in the Jeep to counter the Government's abandonment argument before the Court ruled on the motion to suppress but did not. On this alone, the Court need not reconsider its conclusion.

To correct any errors of fact and avoid any manifest injustice, however, the Court will consider Merriweather's belated arguments. *See Ewing*, 2015 WL2407665, at *1. The body cam video shows that at the time of the stop and subsequent search, the Jeep was parked in front of 225 Grace Street, owned by Essance Timberlake. No one disputes that Ms. Timberlake also owned the Jeep with the 294DKD plate or that she gave permission for Merriweather to drive the Jeep. A closer review of the body cam footage confirms that the Jeep was parked on a paved "skirt" at the end of the driveway at 225 Grace Street. The "skirt" is paved with blacktop just like the street adjacent to it without any curb separating them. As a result, it is difficult at best to discern with certainty from the video whether the Jeep was parked on Ms. Timberlake's private property or on the side of the public street. And Merriweather has not presented additional evidence relevant to ascertaining whether the "skirt" where Merriweather parked the Jeep was private property or the adjacent public street.

The issue need not be resolved further, however, if Merriweather fails to establish that he had an expectation of privacy in the Jeep after fleeing it during the stop. Merriweather argues, without citing any supporting legal authority, that the "police had no valid legal right to search the silver Jeep SUV that was parked on private

property." (ECF 49 at 13). Merriweather's conclusion is presumably grounded in well-established law that "a driver of a borrowed vehicle may establish a reasonable expectation of privacy in a vehicle even though that driver is not the owner of the vehicle." *Johnson v. United States*, 604 F.3d 1016, 1020 (7th Cir. 2010). Yet Merriweather has presented no legal authority to support his conclusion that he maintained his expectation of privacy when he fled the Jeep. The Court's own research reveals that there is no expectation of privacy in abandoned property left readily accessible to the public. *Cf. United States v. Redmon*, 138 F.3d 1109, 1114 (7th Cir. 1998) (finding that a property owner had no expectation of privacy in personal garbage left in a container in front of the garage because it was abandoned and accessible to the public). So while Merriweather ostensibly had an expectation of privacy in the Jeep regardless of where it was parked, he may have given up that expectation of privacy when he fled leaving the driver's door open and accessible to the public.

Merriweather asserts that he did not abandon the Jeep when he fled but that he was forcibly pulled from the Jeep and ran in fear of his life. As the video shows, Merriweather told the stopping officer multiple times during the stop that he would not be getting out of the Jeep. These statements to the officer support a reasonable inference that Merriweather had no intention of leaving the Jeep. What the video also shows is that Merriweather was immediately argumentative with the stopping officer when he was pulled over. The police reports attached to Merriweather's instant motion to reconsider confirm his argumentative and combative responses to the officer. The video also shows Merriweather attempting to roll up the window when the officer put his

10

hand into the window and slapping the officer's hand before opening the door, pushing the officer back with the door, spinning around, and running down the street leaving the car door open. The stopping officer's police report submitted by Merriweather confirms that Merriweather was argumentative and non-compliant thereby escalating the situation with his own conduct such that the officer attempted to retrieve him from the Jeep. As a result, the record even now supports finding that the officer was at greater risk from Merriweather than Merriweather was from the officer.

On this record, Merriweather has not met his burden to show that he had a legitimate expectation of privacy in the Jeep when he left it accessible to the public with the door open. *See Redmon*, 138 F.3d at 1114. And the Government has met its burden to "prove by a preponderance of the evidence that the defendant's voluntary words or actions would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interest in the item to be searched." *Pitts*, 322 F.3d at 456.

### C. Evidentiary Hearing

On these facts, Merriweather once again argues for an evidentiary hearing. As the Court stated in its previous opinion, a district court need only conduct an evidentiary hearing "when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007) (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)). Any factual disputes

must be material to the outcome of the motion to suppress to warrant an evidentiary hearing. *Id.* The burden is on the defendant seeking an evidentiary hearing to allege with specificity a "definite disputed factual issue" that is material to the outcome of the motion. *Id.* If the defendant does not allege any material factual disputes, "district courts may . . . decide pretrial motions to suppress on the paper record." *United States v. Dixon*, 137 F.4th 592, 610 (7th Cir. 2025), *cert. denied*, 2026 WL 490643 (U.S. Feb. 23, 2026). The Court need not "hold an evidentiary hearing to fill gaps in the record." *Id.*

The Court concluded in its opinion denying the motion to suppress that no evidentiary hearing was warranted because Merriweather had not alleged factual issues material to the outcome of the motion to suppress. Merriweather's motion to reconsider has changed nothing. He still has not alleged factual issues material to the outcome of the motion to suppress sufficient to justify an evidentiary hearing.

III.   CONCLUSION

For these reasons, Merriweather's motion to reconsider is **DENIED**. (ECF 49).

SO ORDERED on May 23, 2026.

                                       */s/ Cristal C. Brisco*
                                       CRISTAL C. BRISCO, JUDGE
                                       UNITED STATES DISTRICT COURT